No. 24-5977

# In the United States Court of Appeals for the Ninth Circuit

HAROLD C. WILLIAMS, JR., ET. AL.,

*Plaintiff-Appellants,*

v.

LEGACY HEALTH, ET AL.,

*Defendant-Appellees.*

On Appeal from the United States District Court
for the Western District of Washington
No. 3:22-cv-06004
Hon. Tiffany M. Cartwright

## APPELLANT'S OPENING BRIEF

Corey E. Parker
WSBA# 40006
Washington Appellate Law Firm
1700 Seventh Ave., Ste. 2100
Seattle, WA 98101
corey@washingtonappellatelawfirm.com
(206) 357-8450

*Attorney for Plaintiffs - Appellants*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ...........................................................................i

TABLE OF AUTHORITIES ....................................................................ii

APPELLANT'S OPENING BRIEF ......................................................... 1

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF THE ISSUE ........................................................... 2

STATEMENT OF THE CASE ............................................................ 2

   I.   Relevant Facts.............................................................................. 2

   II.   Procedural History ...................................................................... 3

SUMMARY OF THE ARGUMENT ....................................................5

ARGUMENT ...................................................................................... 6

   A.   Summary Judgment Standard of Review ................................. 6

   B.   Religious Accommodation and Undue Hardship
       Under Title VII................................................................................ 9

   C.   Plaintiffs' Prima Facie Case .................................................... 12

   D.   Reasonable Accommodation ..................................................... 13

   E.   Undue Hardship........................................................................ 22

CONCLUSION ................................................................................ 24

FORM 17. STATEMENT OF RELATED CASES PURSUANT
TO CIRCUIT RULE 28-2.6 ................................................................... 25

CERTIFICATE OF COMPLIANCE ...................................................... 26

CERTIFICATE OF SERVICE ............................................................... 27

# Table of Authorities

Page

**Cases:**

*Adeyeye v. Heartland Sweeteners, Inc.*
721 F.3d 444 (7th Cir. 2013) .................................................... 18, 22

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ................................................................. 8, 20

*Bazinet v. Beth Israel Lahey Health, Inc.*
113 F.4th 9 (1st Cir. 2024) ...................................................... 11, 22

*Bingham v. City of San Jose*
2024 Cal. App. Unpub. LEXIS 6912 (Cal. App. Oct. 30, 2024) . 21, 23

*Bolden-Hardge v. Off. of Cal. State Controller*
63 F.4th 1215 (9th Cir. 2023) ............................................ 10, 17, 19

*Buckingham v. U.S.*
998 F.2d 735 (9th Cir. 1993) .................................................... 11, 18

*Christian v. Umpqua Bank*
984 F.3d 801 (9th Cir. 2020) .......................................................... 10

*Coca-Cola Co. v. Overland, Inc.*
692 F.2d 1250 (9th Cir. 1982) .................................................... 8, 19

*Doe Nos. 1-10 v. Fitzgerald*
102 F.4th 1089 (9th Cir. 2024)
___ S. Ct. ___ 2024 WL 4486390 (U. S. Oct. 15, 2024) ...................... 1

*Doe v. Bd. of Regents of Univ. of Colo.*
100 F.4th 1251 (10th Cir. 2024) ................................................... 13

*Dollar v. Goleta Water Dist.*
(C.D. Cal. Dec. 29, 2022) .............................................................. 21

*Domski v. Blue Cross Blue Shield of Mich.*
(E.D. Mich. Nov. 8, 2024) ............................................................ 24

*Groff v. DeJoy*
600 U.S. 447 (2023) .................................................. 9, 11, 12, 22, 23

*Heller v. EBB Auto Co.*
8 F.3d 1433 (9th Cir. 1993) .................................................... 10, 12

*Kumar v. Gage Gourmet, Inc.*
  325 P.3d 193 (Wash. 2014) ........................................................... 10

*Lowe v. Mills*
  68 F.4th 706 (1st Cir. 2023) ........................................................ 23

*Norse v. City of Santa Cruz*
  629 F.3d 966 (9th Cir. 2010) ......................................................... 7

*Ringhofer v. Mayo Clinic, Ambulance*
  102 F.4th 894 (8th Cir. 2024) ...................................................... 13

*Sonner v. Schwab N. Am., Inc.*
  911 F.3d 989 (9th Cir. 2018) ......................................................... 8

*Terpin v. AT&T Mobility, LLC*
  118 F.4th 1102 (9th Cir. 2024) ....................................................... 7

*Thomas v. Rev. Bd. of Ind. Empl. Sec. Div.*
  450 U.S. 707 (1981) ..................................................................... 13

*Zimmerman v. PeaceHealth*
  701 F. Supp. 3d 1099 (W.D. Wash. 2023) ................................... 20, 21

## Statutes:

28 U.S.C. § 1291 ........................................................................... 1

28 U.S.C. § 1331 ........................................................................... 1

28 U.S.C. § 1367 ........................................................................... 1

28 U.S.C. § 1441 ........................................................................... 4

28 U.S.C. § 1446 ........................................................................... 4

42 U.S.C. § 2000e ................................................................... 1, 4, 9

42 U.S.C. § 2000e-2 ................................................................... 1, 4

Wash. Rev. Code § 49.60.180 ..................................................... 1, 4

## Court Rules:

Fed. R. App. P. 4 ........................................................................... 1

Fed. R. Civ. P. 56 ...................................................................... 6, 7

**Other:**

Juliette Fairley, *Goleta Water District Employees Win $125,000 Settlement over COVID Vaccine Mandate*, S. Cal. Rec. (Nov. 22, 2024) .................................................................................. 21

## Appellant's Opening Brief

## JURISDICTIONAL STATEMENT

The plaintiffs sued the defendants for religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. sections 2000e(j), 2000e-2(a)(1), and the Washington Law Against Discrimination (WLAD), Revised Code of Washington section 49.60.180. The district court had jurisdiction over this case under 28 U.S.C. sections 1331 (federal question jurisdiction) and 1367(a) (supplemental jurisdiction).

The district court granted defendants' motion for summary judgment on August 29, 2024. (2-ER-6) Judgment in favor of the defendants was entered on the same day. (1-ER-3) This decision disposed of all of the parties' claims and was a final decision of the district court. *See Doe Nos. 1-10 v. Fitzgerald*, 102 F.4th 1089, 1094 (9th Cir. 2024) ___ S. Ct. ___ 2024 WL 4486390 (U. S. Oct. 15, 2024) ("As a general rule, a decision is final under § 1291 'only if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."'"), *cert. denied*, *Doe Nos. 1-10 v. Fitzgerald*, 102 F.4th 1089.

Plaintiffs filed a timely notice of appeal on September 26, 2024. (4-ER-758) *See* Federal Rules of Appellate Procedure 4(a)(1)(A) (in a civil case, notice of appeal must be filed "within 30 days after entry of the judgment"). This Court has appellate jurisdiction over the final decision of the district court under 28 U.S.C. section 1291.

1

## STATEMENT OF THE ISSUE

Whether the district court erred in granting the defendants' motion for summary judgment.

## STATEMENT OF THE CASE

### I. Relevant Facts

Legacy Health was a regional healthcare system that operated hospitals and other medical facilities in Oregon and Washington. On August 5, 2021, Legacy Health issued a policy requiring its employees to be fully vaccinated against COVID-19 by September 30, 2021. (3-ER-461–63) A few days later, the Governor of Washington issued a similar proclamation, requiring that all health care providers in the state be fully vaccinated against COVID-19 by October 18, 2021. Proclamation 21–14.1.

Eight of the nine plaintiffs in this case were employees of Legacy Health.[1] The remaining plaintiff was an employee of Northwest Acute Care Specialists (NACS),[2] a medical staffing agency that placed him at a Legacy Health facility. Each of the nine plaintiffs refused to be vaccinated against COVID-19 on religious grounds. The plaintiffs' refusals were

---

[1] Harold Williams, a distribution technician; Daniela Marianu, a registered nurse; Angela Loghry, a registered nurse; Ivan Atanassov, a respiratory therapist; Risa Brody, a registered nurse; Aimee Sweet, a respiratory therapist; Damaris Brici, a registered nurse; and Brianna Hall, a staff nurse.

[2] Toby Higa, a physician assistant.

based on the Legacy Health policy that exempted from its vaccination requirement any employee who could establish a "narrow, evidence based, bona fide religious and/or medical conflict[] with the vaccine."

Similarly, the Washington Governor's proclamation exempted from its vaccination mandate any health care provider who objected based on a "sincerely held religious belief." Washington Governor's Declaration 21–14 (COVID-19 Vaccination Requirement) (Aug. 9, 2021).

Each of the plaintiffs applied for the vaccine exemption with Legacy Health on religious grounds. And Legacy Health denied each of their requests for an exemption.[3] Thereafter, the eight Legacy Health plaintiffs continued to refuse the vaccination, and each was placed on unpaid leave and then terminated shortly thereafter by Legacy Health. The NACS plaintiff was initially placed on unpaid leave, but was vaccinated ten days later.

## II.  Procedural History

On December 23, 2022, plaintiff Harold Williams filed a lawsuit in the U.S. District Court for the Western District of Washington against Legacy Health, the defendant, alleging that by denying a religious exemption to him and thereby failing to "reasonably accommodate" his religious views, Legacy Health violated his rights under Title VII of the

---

[3]  Plaintiff Toby Higa was given an exemption but told the only accommodation available was unpaid leave.

3

Civil Rights Act of 1964, 42 U.S.C. sections 2000e(j), 2000e-2(a)(1), and the Washington Law Against Discrimination (WLAD), Revised Code of Washington section 49.60.180. No. 22-cv-06004 (W.D. Wash.). (4-ER-751)

Williams' lawsuit also named as defendants Does 1–10. These defendants were never identified, and thus, Williams did not seek to amend his complaint to name them. On March 14, 2023, Legacy Health filed its answer to Williams' complaint. (4-ER-744)

On July 27, 2023, the district court consolidated Williams' lawsuit with three other lawsuits in the Western District of Washington involving eight other employees of Legacy Health. Those cases were No. 23–05205, involving plaintiff Toby Higa; No. 23–05586, involving plaintiffs Daniela Marianu, Angela Loghry, and Ivan Atanassov; and 23-cv-05595, involving plaintiffs Risa Brody, Aimee Sweet, Damaris Brici, and Brianna Hall.[4]

On May 31, 2024, Legacy Health filed a motion for summary judgment against all nine plaintiffs. (4-ER-712) Plaintiffs responded on June 21, 2024. (3-ER-301) Northwest Acute Care Specialists, a defendant who was sued by only one of the plaintiffs, Toby Higa, in No. 23-cv-05205,

---

[4]   The three lawsuits described above were originally filed in Clark County (Washington) Superior Court. They were removed to the U.S. District Court for the Western District of Washington at the request of defendant Legacy Health pursuant to 28 U.S.C. sections 1441(a) and 1446.

joined Legacy Health's motion for summary judgment on June 24, 2024 (3-ER-297), and it filed its own motion for summary judgment on July 10, 2024 (2-ER-267).

On August 29, 2024, the district court granted Legacy Health's motion for summary judgment "[b]ecause Legacy Health demonstrate[d] that allowing Plaintiffs to work while unvaccinated posed an undue hardship – and because Plaintiffs fail[ed] to provide contrary evidence." (2-ER-7) "On the record before the Court, no reasonable jury could find against Legacy Health's undue hardship defense." (2-ER-20) The district court also granted Northwest Acute Care Specialists' motion for summary judgment "because the undue hardship defense applies." (2-ER-21)

On September 26, 2024, plaintiffs filed a notice of appeal. (4-ER-758)

## SUMMARY OF THE ARGUMENT

Viewing the facts and drawing all reasonable inferences in the plaintiffs' favor, there is a genuine dispute as to two material facts: First, whether the defendants initiated good faith efforts to determine whether they could reasonably accommodate plaintiffs' religious beliefs without firing them. Second, whether accommodating the plaintiffs by allowing them to remain unvaccinated but requiring that they do daily symptom screening and temperature tests, wear masks and other personal protective equipment (PPE), get frequently tested for COVID-19, wash their hands often and use hand sanitizer, and practice good hygiene (as they

5

were required to by Legacy Health prior to the vaccine mandate) and/ or provide a blood test to indicate if they had immunity from a previous COVID-19 infection would have constituted an undue hardship on the operation of their health facilities.

Given the existence of a genuine dispute as to material facts, summary judgment in favor of the defendants was inappropriate. Accordingly, this Court should vacate the order and judgment of the district court and remand the case for further proceedings.

## ARGUMENT

### A.  Summary Judgment Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure states:

> (a) *Motion for Summary Judgment or Partial Summary Judgment.* A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

In the district court, a motion for summary judgment and the response thereto

> require[] the parties to set out facts they will be able to prove at trial. While the evidence presented at the summary judgment stage does not yet need to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence. *See* Fed. R. Civ. P. 56([c](4)) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant [or declarant] is competent to testify on the matters stated."); *Celotex Corp.* [*v. Catrett*, 477 U.S. [317,] 324 [(1986)].

*Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010); *see also* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . .").

This Court reviews a

> district court's order granting summary judgment . . . de novo. Summary judgment is appropriate only if, viewing the facts and drawing all reasonable inferences in [the nonmovant's] favor, "there is no genuine dispute as to any material fact and [the movant] is entitled to judgment as a matter of law." That is, [the nonmovant] "need only show a triable issue of material fact to proceed to trial, not foreclose any possibility of the [movant]'s success on the claims."

*Terpin v. AT&T Mobility, LLC*, 118 F.4th 1102 (9th Cir. 2024) (citations omitted). "As to materiality, the substantive law will identify which facts

are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Or, put another way, the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. "The moving party has the burden of demonstrating the absence of a genuine issue of material fact." *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1253 (9th Cir. 1982).

"[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. Such standards are those governing the burden of proof: e.g., preponderance, clear and convincing. *See, e.g.*, *Sonner v. Schwab N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) (per curiam) ("Therefore, to defeat summary judgment, Sonner [the nonmovant] need only produce evidence of a genuine dispute of material fact that could satisfy the preponderance of the evidence burden at trial.").

## B. Religious Accommodation and Undue Hardship Under Title VII

As the Supreme Court noted recently, "Since its passage, Title VII of the Civil Rights Act of 1964 has made it unlawful for covered employers 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges [of] employment, because of such individual's . . . religion.' 42 U.S.C. § 2000e-2(a)(1)." *Groff v. DeJoy*, 600 U.S. 447, 457 (2023). Title VII goes on to define "religion" as follows:

> (j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j).

This Circuit has explained:

> We analyze Title VII religious discrimination claims under a two-part framework. *First,* the employee must establish a prima facie case by proving that (1) he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer threatened him with or subjected him to discriminatory treatment, including discharge, because of his inability to fulfill the job requirements.

9

*Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993) (citations omitted).

*Second,*

> [o]nce an employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show "either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." Undue hardship is an affirmative defense, and accordingly dismissal on that ground is proper "only if the [employer] shows some obvious bar to securing relief on the face of the complaint or in any judicially noticed materials."

*Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023) (citations omitted).[5] As to reasonable accommodation, in an analogous context, this Circuit explained:

> An employer, to meet its burden under the Act [the Rehabilitation Act of 1973], may not merely speculate that a suggested accommodation is not feasible. When accommodation is required to enable the employee to perform the essential functions of the job, the employer has a duty to "gather sufficient

---

[5]   Plaintiffs' complaint alleges that the defendants violated both Title VII and the Washington Law Against Discrimination (WLAD), Wash. Rev. Code § 49.60.180. This Court has instructed that, "[i]n the absence of contrary authority, we construe the employer liability standards under Title VII and the WLAD to be functionally identical." *Christian v. Umpqua Bank*, 984 F.3d 801, 811 n.10 (9th Cir. 2020); *see also Kumar v. Gage Gourmet, Inc.*, 325 P.3d 193, 197 (Wash. 2014) ("Washington courts have long equated the term 'creed' in the WLAD with the term 'religion' in Title VII of the Civil Rights Act of 1964 (Title VII).").

> information from the applicant and qualified experts as need-
> ed to determine what accommodations are *necessary* to enable
> the applicant to perform the job . . . ."

*Buckingham v. U.S.*, 998 F.2d 735, 740 (9th Cir. 1993) (citation omitted).

"Undue hardship in a Title VII religious discrimination case is an affir-

mative defense. 'The undue hardship defense is built into the statutory

definition of "religion," see 42 U.S.C. § 2000e(j) . . . .'" *Bazinet v. Beth Is-*

*rael Lahey Health, Inc.*, 113 F.4th 9, 17–18 (1st Cir. 2024). Lower courts

had previously applied a test that defined "undue hardship" for an em-

ployer as any effort that involves "more than a de minimus cost" to the

employer. *See Groff v. DeJoy*, 600 U.S. at 456. But in *Groff*, the Supreme

Court clarified that "'more than a *de minimis* cost' . . . does not suffice to

establish 'undue hardship' under Title VII." *Id.* at 468. Instead, "'undue

hardship' is shown when a burden is substantial in the overall context of

an employer's business." *Id.*; *see also id.* at 470 ("We think it is enough to

say that an employer must show that the burden of granting an accom-

modation would result in substantial increased costs in relation to the

conduct of its particular business.").

> [U]nder any definition, a hardship is more severe than a mere
> burden. So even if Title VII said only that an employer need
> not be made to suffer a "hardship," an employer could not
> escape liability simply by showing that an accommodation
> would impose some sort of additional costs. Those costs would
> have to rise to the level of hardship, and adding the modifier
> "undue" means that the requisite burden, privation, or adver-
> sity must rise to an "excessive" or "unjustifiable" level.

11

*Groff v. DeJoy*, 600 U.S. at 469 (citations omitted).

> What matters more than a favored synonym for "undue hardship" (which is the actual text[6]) is that courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, "size and operating cost of [an] employer."

*Groff v. DeJoy*, 600 U.S. at 470–71 (citation omitted).

### C. Plaintiffs' Prima Facie Case

In this appeal, the plaintiffs' prima facie case is not at issue. See *Heller v. EBB Auto Co.*, 8 F.3d at 1438 (citations omitted) ("[T]he employee must establish a prima facie case by proving that (1) he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer threatened him with or subjected him to discriminatory treatment, including discharge, because of his inability to fulfill the job requirements."). "Religious beliefs do not need to be 'acceptable, log-

---

[6] The phrase "undue hardship" comes directly from Title VII, which proscribes employment discrimination based on any one of several factors, including religion. 42 U.S.C. § 2000e-2(a)(1).

(j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

    *Id.* § 2000e(j).

ical, consistent, or comprehensible to others.'" *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 900 (8th Cir. 2024) (quoting *Thomas v. Rev. Bd. of Ind. Empl. Sec. Div.*, 450 U.S. 707, 714 (1981) *(Thomas)*). Nor is there any requirement that an employee's beliefs be "shared by all of the members of a religious sect." *Id.* at 715–16. *See also Doe v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1269 (10th Cir. 2024) (holding a public university vaccine mandate should have been enjoined as violating the Free Exercise Clause because it "discriminates explicitly against religious practices that do not have formal 'teachings'").

During litigation before the district court, Legacy Health retreated from its earlier, unsupportable position that employees requesting an exemption would need to provide a supporting letter from a religious authority. Instead, as the district court noted, "Legacy Health does not challenge the sincerity of Plaintiffs' alleged religious beliefs. And for purposes of this order, the Court assumes without deciding that each Plaintiff could put forward evidence to support the elements of a prima facie case." (2-ER-16–17).

## D. Reasonable Accommodation

Legacy Health's COVID-19 vaccination policy (Policy No. 500.102), effective August 5, 2021, specifically provided for the possibility of religious exemptions to its vaccine requirement:

13

E. Exemptions

1. Legacy Health System will consider narrow, evidence based, bona fide religious and/or medical conflicts with the vaccine.

2. Exemption requests will be managed by the Employee Health Department . . . . a. Exempt caregivers will be required to: i. Participate in frequent testing and wear PPE as directed by Employee Health while on Legacy Health campuses [and] ii. Provide medical updates to Employee Health as required." (3-ER-462–63).

Any caregiver who does not comply with this COVID-19 Vaccine Policy must adhere to strict safety measures which may include, but will not be limited to, repeated and frequent precautionary testing, additional masking, position reassignment, possible removal from work schedules and any other infection prevention requirements in accordance with facility policy, CDC or public health recommendations for non-vaccinated individuals to the fullest extent permissible by law. . . .

(3-ER-462–63) To implement the exemptions, Legacy Health "established a Vaccine Exception[7] Work Group composed of primary care doctors, infectious disease specialists, ethicists, clergy members, in addition to others, who would review provider requests for medical and religious exceptions." Declaration of Melinda Muller, MD, Chief Medical Officer of Legacy Health (3-ER-424).

However, as described below, the record shows that Legacy Health failed to consider this part of its vaccination policy in assessing each of

---

[7] "Exception" should read "Exemption."

14

the plaintiffs' requests for a reasonable accommodation or exemption. Legacy Health provided its employees with a one-page application (COVID-19 Vaccination Exemption Request Form) to request an exemption to its vaccine mandate. On the application, there was a box to check for a medical exemption and one to check for a religious exemption. As to the latter, the form requested a supporting letter from a religious authority.

Each of the plaintiffs completed and submitted the form to Legacy Health, requesting a religious exemption. And each of them received an identical email rejection from Legacy Health.[8] The rejection stated in part:

> The exception work group . . . believes there is no ideal way to determine a sincerely held religious belief and decided to use the following criteria:
>
> ● Consistency (have you have [sic] recently received other vaccines[?])
>
> ● Specificity (your religious belief is clearly stated, and that religious belief is specifically against receiving the COVID-19 vaccine)
>
> Your request was carefully reviewed and your request for religious exception was denied because the information you provided does not meet one or more of the above criteria.

---

[8]  As stated above, Plaintiff Toby Higa received an exemption but was not offered an accommodation other than temporary unpaid leave until the end of the year, revocation of hospital practicing credentials by Legacy, and termination by NACS once Legacy revoked credentials.

(3-ER-339) The email went on to inform the employee that he or she now had three choices: (1) get vaccinated, (2) be placed on leave and terminated shortly thereafter, or (3) resign. (3-ER-339)

The following plaintiffs stated that at no time during the exemption process did Legacy Health discuss with them, or offer them a chance to consider, accommodation short of leave or termination. See Declaration of Damaris Brici (3-ER-336); Declaration of Aimee Sweet (3-ER-342); Statement of Harold Williams (3-ER-375); Declaration of Angela Loghry (3-ER-402); Declaration of Risa Brody (3-ER-357); Transcript of Toby Higa (2-ER-70); Declaration of Daniela Marianu (3-ER-380); Declaration of Briana Hall (3-ER-387).

This was true even though some of the plaintiffs suggested specific accommodations. For example, plaintiff Angela Loghry, a registered nurse, wrote in a statement accompanying her exemption request that she should be allowed to continue to treat her patients safely as she had "since the beginning of the pandemic: with masking, appropriate social distancing when unmasked, diligent hand hygiene, and accurate self-assessment of possible symptoms." (3-ER-405) Plaintiff Daniela Marianu, another registered nurse, made the same request, saying that she was "willing to continue to implement the same safety precautions that were argued to be effective before vaccines were available such as social distancing, masking indoors, and self-reporting of symptoms." (3-ER-382)

16

And in an email to Legacy Health objecting to the denial of her request for a religious exemption, plaintiff Risa Brody, another registered nurse, wrote:

> If vaccinated staff are allowed to wear a mask, self screen and keep working in patient care jobs, then I am being discriminated against based on my religious beliefs which do not permit me to get the Covid19 vaccine. I am asking you to reconsider your denial, return me to the work schedule and allow me to take the same measures as vaccinated employees at work.

(3-ER-364)

There was no response from Legacy Health to these requests. Indeed, once a plaintiff submitted a religious exemption application form, Legacy Health's only response was a terse, formulaic denial in an email telling the applicant, as noted above, that he or she had three choices: get vaccinated, be terminated, or resign. Subsequent attempts to communicate with Legacy Health were unsuccessful. Legacy Health did not initiate a conversation with any of the plaintiffs about what arrangements might constitute a reasonable accommodation.

"Once an employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show 'either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship.'" *Bolden-Hardge v. Off. of Cal. State*

*Controller*, 63 F.4th at 1224 (citations omitted). In light of the evidence described above, it seems clear that Legacy Health did not "initiate[] good faith efforts to accommodate reasonably the employee's religious practices." In an analogous context, this Court wrote:

> An employer, to meet its burden under the Act [the Rehabilitation Act of 1973], may not merely speculate that a suggested accommodation is not feasible. When accommodation is required to enable the employee to perform the essential functions of the job, the employer has a duty to "gather sufficient information from the applicant and qualified experts as needed to determine what accommodations are *necessary* to enable the applicant to perform the job . . . ."

*Buckingham v. U.S.*, 998 F.2d at 740 (citation omitted); *see also Adeyeye v. Heartland Sweeteners, Inc.*, 721 F.3d 444, 455 (7th Cir. 2013) ("Finally, Heartland argues we should affirm summary judgment on the theory that any accommodation of Adeyeye's religion would have imposed an undue hardship on it. On this issue, Heartland bears the burden of proof, so it must show, as a matter of law, that any and all accommodations would have imposed an undue hardship.").

In sum, Legacy Health's blanket denials of its employees' applications for a religious exemption from the COVID-19 vaccination requirement was an exercise in going through the motions. The record does not reflect that, in practice, Legacy Health gave any thought to the substance of the plaintiffs' applications and requests for specific accommodations even though its formal policy contemplated that reasonable accommodations

18

would be granted to some employees, who would "be required to: i. Participate in frequent testing and wear PPE as directed by Employee Health while on Legacy Health campuses [and] ii. Provide medical updates to Employee Health as required."

At some point, Legacy Health simply decided that it would not grant any accommodation to any of its employees, contrary to the requirements of Title VII. In her declaration, Legacy Health's chief medical officer stated, "Ultimately, the SLT [Senior Leadership Team] determined that, consistent with available science, having any unvaccinated providers continue in-person work presented an unreasonable health and safety risk . . . ." Declaration of Melinda Muller, MD, Chief Medical Officer of Legacy Health (3-ER-424).

As noted above, "[t]he moving party has the burden of demonstrating the absence of a genuine issue of material fact." *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d at 1253. Here, viewing the facts and drawing all reasonable inferences in the plaintiffs' favor, there is a genuine dispute as to whether Legacy Health, as required by Title VII, "initiated good faith efforts to accommodate reasonably the employee's religious practices," *Bolden-Hardge*, 63 F.4th at 1224. Legacy Health has not demonstrated that there is no genuine dispute on this issue. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-

19

moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *see also id.* at 251–52 ("[T]he evidence presents a sufficient disagreement to require submission to a jury . . . .").

A recent opinion in another case issued by the district court below is instructive. In *Zimmerman v. PeaceHealth*, 701 F. Supp. 3d 1099 (W.D. Wash. 2023), 50 employees of PeaceHealth sued PeaceHealth under Title VII and the WLAD for failure to accommodate their religious beliefs in connection with the COVID-19 vaccine. PeaceHealth was a healthcare organization, and it denied its employees' requests for reasonable accommodations. But "PeaceHealth granted no religious accommodations other than paid time off followed by unpaid administrative leave." *Id.* at 1107. The district court denied PeaceHealth's motion to dismiss, explaining:

> [B]oth this district and the Ninth Circuit have observed that "[t]he fact that unpaid leave may, in certain circumstances and where requested, constitute a reasonable accommodation does not mean that it cannot also be an adverse action, particularly where the employee is placed on unpaid leave involuntarily."
>
> Further, Plaintiffs allege that PeaceHealth could have reasonably accommodated their religious practices by transferring them to other positions or allowing them to use additional protective equipment and other measures. Although Title VII "directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation," the availability of options that would allow the employee to keep working may affect the reasonableness of an option that would not. *See Mois v. Wynn Las Vegas LLC*, 715 F. App'x

20

600, 601 (9th Cir. 2017) (unpublished) (holding that unpaid leave was not a reasonable accommodation under ADA where light duty work was an option).

*Zimmerman v. PeaceHealth*, 701 F. Supp. 3d at 1110 (citations omitted). *See also Bingham v. City of San Jose*, 2024 Cal. App. Unpub. LEXIS 6912, at \*13–14 (Cal. App. Oct. 30, 2024) (not reported) (holding that plaintiffs had adequately alleged that putting them on extended and involuntary unpaid leave after they requested a religious exemption to a vaccine mandate was not a reasonable accommodation).[9] The district court in *Zimmerman* also observed that PeaceHealth's argument did not "address Plaintiffs' allegation that, in its original press release announcing the mandate, PeaceHealth suggested that other reasonable accommodations were possible, stating that exempted individuals would 'be subject to regular COVID-19 testing, as well as additional masking, potential reassignment to non-patient care settings, and other safety protocols.'" *Zimmerman*, at 1114. In this case, defendant Legacy Health made the same statement.

---

[9]  Another group of plaintiffs were able to secure a $125,000 settlement after their employer granted them religious exemptions from its vaccine mandate but only offered unpaid leave or bi-weekly COVID-19 testing (at the employees' expense). as accommodations). Final Judgment, *Dollar v. Goleta Water Dist.*, ECF No. 54 (C.D. Cal. Dec. 29, 2022); Juliette Fairley, *Goleta Water District Employees Win $125,000 Settlement over COVID Vaccine Mandate*, S. Cal. Rec. (Nov. 22, 2024), https://socal-record.com/stories/635328857-goleta-water-district-employees-win-125-000-settlement-over-covid-vaccine-mandate.

## E.  Undue Hardship

"Undue hardship in a Title VII religious discrimination case is an affirmative defense." *Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th at 17. At the summary judgment stage, as to the undue hardship issue, the employer "bears the burden of proof, so it must show, as a matter of law, that any and all accommodations would have imposed an undue hardship." *Adeyeye v. Heartland Sweeteners, Inc.*, 721 F.3d at 455.

To demonstrate that a religious accommodation would result in an undue hardship, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. at 470; *see also id.* at 468 "'[U]ndue hardship' is shown when a burden is substantial in the overall context of an employer's business."). A showing that an accommodation imposes "'more than a *de minimis* cost' . . . does not suffice to establish 'undue hardship' under Title VII." *Id.*

Legacy Health's evidence did not show definitively that the practices and procedures sought by the plaintiffs as religious accommodations – masks and other PPE, testing, etc. – would result in substantially increased costs in, or impose a substantial burden on, the operation of its healthcare facilities. These practices and procedures had been required in healthcare facilities throughout the United States since the beginning of the pandemic in early 2020 and before COVID-19 vaccines

22

were available. That approach seemed reasonably effective in containing COVID-19. *See* Report of Legacy Health's Expert Seth Cohen, MD, (4-ER-605) ¶ 35 ("Ready access to testing, either through symptom-based strategies or at regular intervals[,] can be effective in healthcare facilities . . . ."), (4-ER-605) ¶ 36 ("[P]ersonal protective equipment (PPE) can be quite effective on an individual level . . . .").

Legacy Health is comprised of 8 hospitals and over 70 primary care, specialty, and urgent care clinics. And it had approximately 14,000 employees and nearly 3,000 allied health care providers. Declaration of Melinda Muller, MD, Chief Medical Officer of Legacy Health (3-ER-416). Legacy Health has simply not carried its burden of demonstrating unequivocally that allowing the plaintiffs to work unvaccinated while following strict protective measures and procedures "would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. at 470.[10] Nor has it shown that the cost of accommodation is not outweighed by any staffing issues—including costs to pay overtime or use third-party agency staff—that may be created by terminating employees seeking an exemption. *Cf. Bingham v. City of San Jose*, 2024 Cal. App. Unpub. LEXIS 6912, at *18–19 (not report-

---

[10] For an instructive example of undue hardship, *see Lowe v. Mills*, 68 F.4th 706, 718–23 (1st Cir. 2023) (state vaccine mandate did not allow for religious exemptions, and thus, healthcare organizations could not permit employees to work unvaccinated without risking suspension of their operating licenses; such suspensions constituted undue hardship under Title VII).

ed) (ruling that accommodation for firefighters would not have been an undue hardship in part because the city was facing a severe shortage of firefighters).[11] It has not demonstrated that there is no genuine dispute on the issue of undue hardship. Here, a reasonable jury could return a verdict for the plaintiffs. The district court erred in granting summary judgment in favor of Legacy Health.

## CONCLUSION

For the reasons stated above, plaintiffs request this Court to vacate the district court's order and judgment granting summary judgment in favor of the defendants and to remand the case to the district court for further proceedings.

|  |  |
|---|---|
|  | Washington Appellate Law Firm |
|  | Respectfully submitted, |
| Dated: December 12, 2024 | By: /s/ Corey Parker |
|  | Attorney for Plaintiffs - Appellants |

---

[11]  Staffing issues are not the only potential cost Legacy Health faces for its refusal to provide religious exemptions to its vaccine mandate. A former employee of Blue Cross Blue Shield of Michigan recently won a jury verdict for $12,690,000 against her former employer after it denied her request for an accommodation from its vaccine mandate. Verdict Form, *Domski v. Blue Cross Blue Shield of Mich.*, ECF No. 122 (E.D. Mich. Nov. 8, 2024).

# FORM 17. STATEMENT OF RELATED CASES
# PURSUANT TO CIRCUIT RULE 28-2.6

**9th Cir. Case Number: No. 24-5977**

The undersigned attorney or self-represented party states the following:

[ **X** ] I am unaware of any related cases currently pending in this court.

[   ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[   ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Dated: December 12, 2024          By: /s/ Corey Parker _____

25

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **5,432 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Century Schoolbook**, using TypeLaw.com's legal text editor.


Dated: December 12, 2024          By: /s/ Corey Parker

26

## Certificate of Service

I hereby certify that I electronically filed the foregoing **APPEL-LANT'S OPENING BRIEF** with the Clerk of the Court by using the Appellate CM/ECF system on **December 12, 2024**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Washington Appellate Law Firm

Respectfully submitted,

Dated: December 12, 2024      By: /s/ Corey Parker

Attorney for Plaintiffs - Appellants

27