No. 24-5977

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

HAROLD C. WILLIAMS, JR., ET. AL.,

*Plaintiff-Appellants,*

v.

LEGACY HEALTH, ET AL.,

*Defendant-Appellees.*

On Appeal from the United States District
Court for the Western District of Washington
No. 3:22-cv-06004
Hon. Tiffany M. Cartwright

## APPELLANTS' REPLY BRIEF

Corey E. Parker
WSBA# 40006
Washington Appellate Law Firm
1700 Seventh Ave., Ste. 2100
Seattle, WA 98101
corey@washingtonappellatelawfirm.com
(206) 357-8450

*Attorney for Plaintiff-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ii

TABLE OF AUTHORITIES................................................................ iii

ARGUMENT .................................................................................... 1

I.    Plaintiffs did not waive their argument that Defendants failed to consider alternative accommodations........................................... 2

II.   Summary Judgment Was Improper Because Genuine Disputes of Material Facts Exist Concerning Whether Defendants Considered Alternative Accommodations and Whether Reasonable Accommodations Would Have Presented an Undue Hardship..... 8

    A.    There is a genuine dispute of material fact concerning whether Defendants considered all alternative accommodations in good faith. ......................................................................................9

        1.    Indefinite unpaid leave and planned termination is not a reasonable alternative accommodation................................19

    B.    There is a genuine dispute of material fact concerning whether accommodating the Plaintiffs' sincerely held religious beliefs would result in an undue hardship......................................... 22

CONCLUSION ...............................................................................28

FORM 17. STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6 ........................................................................29

CERTIFICATE OF COMPLIANCE .......................................................30

CERTIFICATE OF SERVICE...............................................................31

ii

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Anderson v. General Dynamics Convair Aerospace Div.*,
589 F.2d 397 (9th Cir. 1978) ............................................................ 4

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................... 9

*Ansonia Bd. of Educ. v. Philbrook*,
479 U.S. 60 (1986) ..................................................................... *passim*

*Balint v. Carson City, Nev.*,
180 F.3d 1047 (9th Cir. 1999) ............................................... 6, 13, 24

*Baugh v. Austal USA, LLC*,
2025 No. 1:22-cv-00329 (S.D. Ala. Jan 3, 2025) ............................. 24

*Combs v. Peace Health*,
2025 No. 3:24-cv-00776 (D. Or. Jan. 14, 2025) ............................... 11

*Duden v. State of Washington*,
2025 No. 3:24-cv-00255 (E.D. Wash. Jan. 2, 2025) ......................... 11

*EEOC v. Townley Eng'g Mfg., Co.*,
859 F.2d 610 (9th Cir. 1988) ........................................................... 11

*EEOC v. Chevron Phillips Chem. Co., LP*,
570 F.3d 606 (5th Cir. 2009) ............................................................. 7

*EEOC v. LHC Grp.*,
773 F.3d 688 (5th Cir. 2014) ............................................................. 7

*Fonseca v. Sysco Food Servs. of Ariz.*,
  374 F.3d 840 (9th Cir. 2004) ......................................................................19

*Gallagher v. Hawaii Symphony Orchestra*,
  2024 No. 1:23-cv-00245 (D. Haw. Mar. 27, 2024)...........................20

*Gamon v. Shriners Hosps. for Children*,
  No. 3:23-cv-00216, 2024 WL 627310 (D. Or. Feb. 15, 2024)............26

*Groff v. DeJoy*,
  600 U.S. 447 (2023).................................................................*passim*

*Kumar v. Gate Gourmet, Inc.*,
  180 Wash. 2d 481 (2014) ...............................................................10

*Leslie v. Grupo ICA*,
  198 F.3d 1152 (9th Cir. 1999) .........................................................10

*MacDonald v. Oregon Health & Science University*,
  689 F. Supp. 3d 910 ....................................................................24, 25

*Morris v. McNicol*,
  83 Wash. 2d 491 (1974) ..................................................................10

*Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'ns, Inc.*,
  915 F.3d 617 (9th Cir. 2019) ...........................................................10

*Nunes v. Wal-Mart Stores, Inc.*,
  164 F.3d 1243 (9th Cir. 1999) ......................................................20, 21

*Tiano v. Dillard*,
  139 F.3d 679 (9th  Cir. 1998) .........................................................12

*Tolan v. Cotton*,
  572 U.S. 650 (2014)........................................................................10

iv

*Trans World Airlines, Inc. v. Hardison,*
    432 U.S. 63 (1977)...................................................................... 10

*United States v. Whitten,*
    706 F.2d 1000 (9th Cir. 1983) ....................................................2, 8

*Atherton Condo. Apt-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.,*
    115 Wash. 2d 506 (1990) ............................................................ 10

*We the Patriots USA, Inc. v. Hochul,*
    17 F.4th 226 ...............................................................................26

*Wilson v. Steinbach,*
    98 Wash. 2d 434 (1982) .............................................................. 10

*Zimmerman v. PeaceHealth,*
    2023 No. 3:22-cv-05960 (W.D. Wash. Nov. 9, 2023).............20, 24, 27

## STATUTES

Title 42 U.S.C. § 2000e............................................................... 10

Wash. RCW 49.60.180 ................................................................ 10

## FEDERAL RULES

Fed. R. App. P. 32 ...................................................................... 29

v

# ARGUMENT

Defendants argue that they considered alternative accommodations but did not find any feasible. Plaintiffs dispute this claim and presented significant evidence that Defendants failed to meaningfully evaluate reasonable alternative accommodations. Specifically, Defendants provide no explanation—let alone evidence—demonstrating that they assessed whether the same protective measures that had previously allowed Plaintiffs to work safely (such as PPE, masking, and distancing) could be effective accommodations in a changed environment where the vast majority of the workforce had been vaccinated. Instead, the record reflects a categorical rejection of religious exemption requests in violation of Title VII.

This Reply first establishes that Plaintiffs properly preserved the issue of Defendants' failure to consider alternative accommodations, refuting Defendants' assertion of waiver. It then demonstrates that genuine disputes of material fact exist as to whether Defendants considered alternative accommodations and whether accommodating Plaintiffs' sincerely religious beliefs would result in an undue hardship. Because these factual disputes are central to the resolution of Plaintiffs'

1

claims, they must be decided by a jury, not resolved at summary judgment.

### I. Plaintiffs did not waive their argument that Defendants failed to consider alternative accommodations.

As a threshold matter, Defendants falsely assert that Plaintiffs waived the issue of alternative accommodations on appeal. NACS Answering Br. at 27; Legacy Answering Br. at 2, 29.[1] The summary judgment record establishes that this issue was squarely before the district court and is properly preserved for appellate review. Both the district court order denying summary judgment and Plaintiffs' filings establish that Plaintiffs did not waive the issue of whether Defendants failed to consider alternative accommodations.

Generally, an issue not raised before the trial court cannot be presented for the first time on appeal. *United States v. Whitten*, 706 F.2d 1000, 1012 (9th Cir. 1983). This principle promotes fairness and judicial efficiency, ensuring that litigants are not unfairly surprised by

---

[1] Legacy misconstrues Plaintiffs' argument as raising a standalone claim for failure to engage in an interactive process. Legacy Answering Br. at 48-51. In fact, Plaintiffs argued that Legacy failed to undertake a good faith effort to explore reasonable religious accommodations, as required under Title VII. Appellant's Br. at 18-19.

an appellate ruling on an issue they had no opportunity to address at trial. *See id.* ("It would be unfair to surprise litigants on appeal by final decision of an issue on which they had no opportunity to introduce evidence.").

Here, there was no surprise. The district court and Defendants had the opportunity to address whether Defendants sufficiently considered alternative accommodations—and in fact, they did.

First, the district court itself acknowledged that Plaintiffs argued that Defendants failed to show what accommodation options they considered, stating: "Plaintiffs assert that Legacy 'has failed to establish what accommodations [it] considered[.]" (2-ER-18; 3-ER-303.) Specifically, Plaintiffs stated that Legacy "has not put any forth facts to dispute regarding accommodations considered." (3-ER-308.)

Moreover, the court, citing *Groff v. DeJoy*, 600 U.S. 447, 473 (2023), recognized that "[w]here an employer determines a particular accommodation request would cause undue hardship, the employer must consider alternative accommodation options[,]" showing that the district court did indeed consider this issue and the question was squarely before the court. (2-ER-16.)

3

Notably, the court cited the precise pages of *Groff* invoked by Plaintiffs in their Response to NACS's Motion for Summary Judgment and specifically reached the issue. (2-ER-50 (citing page 473).) *Cf. Anderson v. General Dynamics Convair Aerospace Div.*, 589 F.2d 397, 402 n.5 (9th Cir. 1978) (noting that where a district court did not reach an issue and a party raises the issue on appeal, this Court will decline to address the question).

Second, in its reply in support of summary judgment, NACS explicitly claims that it "searched for an alternative position for Plaintiff" (2-ER-27), thereby directly addressing—and attempting to rebut—Plaintiffs' argument that no effort was made to consider alternative accommodations. This statement shows that NACS had a full and fair opportunity to respond to Plaintiffs' contention that Defendants failed to explore reasonable alternatives.

Similarly, Legacy's reply in support of summary judgment directly responds to Plaintiffs' argument by asserting that "it is irrelevant whether Legacy even considered Plaintiffs' accommodation requests *at all*." (2-ER-284.) In taking the position that it had no obligation to consider proposed accommodations if it could establish undue hardship,

4

Legacy placed the adequacy of its accommodation efforts at issue. That argument necessarily raises the question of what, if anything, Legacy considered—and whether that process satisfied Title VII's requirements. Far from avoiding the issue, Legacy's own briefing shows that this was a contested point before the district court.

Third, attached to Plaintiffs' Response to NACS Motion for Summary Judgment as Exhibit A, was the transcript of Plaintiff Toby Higa's deposition. (2-ER-60, 62.) Plaintiff Higa specifically testified: "There was no option to discuss any potential options." (2-ER-70.) He further testified that he was willing to discuss the concerns "and what [he] could do to help them[.]" (*Id.*) Thus, Plaintiff Higa's statements in the summary judgment record confirm that Defendants did not meaningfully consider alternative accommodations, and the issue is properly before this Court.

Third, as detailed more below, Plaintiffs attached exhibits to their responses to the NACS and Legacy motions for summary judgment establishing that Defendants never invited them to participate in any accommodation meeting or process to assess whether their religious beliefs could be accommodated. (3-ER-336, 342, 357, 368, 380, 387, 402.)

This evidence directly supports Plaintiffs' argument that Defendants failed to consider alternative accommodations. *See* Appellant's Br. at 18-19. By demonstrating that Defendants never invited Plaintiffs to participate in any meeting or process to assess whether their religious beliefs could be accommodated, Plaintiffs show that no individualized assessment occurred. The absence of any such engagement demonstrates that Defendants issued blanket denials without exploring reasonable alternatives. Under *Groff* and established Title VII precedent, the failure to assess potential accommodations in a fact-specific manner is itself a failure to accommodate. *See Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999) (stating that determination of whether accommodations would have posed an undue hardship is a factual inquiry that "must be determined within the particular factual context of each case").

Plaintiffs' argument that Defendants issued blanket denials and failed to consider any accommodations is substantively the same as arguing that Defendants failed to evaluate alternative accommodations. *See* Appellant's Br. at 18. Under Title VII, the refusal to explore

6

alternatives is the very failure to accommodate. *See Groff*, 600 U.S. at 470.

To the extent Legacy attempts to reframe Plaintiffs' argument as an ADA-style "interactive process" claim, that too misses the mark. Legacy Answering Br. at 48-51. Plaintiffs do not assert a formal procedural violation akin to the ADA; rather, they argue that Defendants failed to meet their burden under Title VII to make a good faith effort to accommodate religious beliefs before asserting undue hardship. Appellant's Br. at 18-19. *See EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009), *overruled on other grounds EEOC v. LHC Grp.*, 773 F.3d 688, 696-97 (5th Cir. 2014) ("When an employer does not engage in a good faith interactive process, that employer violates the ADA—including when the employer discharges the employee instead of considering the requested accommodations."); *Lynn Kizer v. St. Jude Children's Research Hosp.*, No. 24-5207, 5 (6th Cir. Nov 18, 2024) (unpublished) ("Neither the ADA nor Title VII contains a statutory reference to a required interactive process, but the regulations implementing the ADA state that '[t]o determine the appropriate reasonable [disability] accommodation it may be necessary

7

for the [employer] to initiate an informal, interactive process with the individual with a disability in need of the accommodation.'").

In conclusion, Plaintiffs raised the issue of whether Defendants sufficiently considered alternative accommodations in the district court, Defendants had an opportunity to introduce evidence on the matter, the district court specifically considered the issue, and the waiver doctrine is inapplicable. This issue is properly before this Court. *See Whitten*, 706 F.2d at 1012.

> **II. Summary Judgment Was Improper Because Genuine Disputes of Material Facts Exist Concerning Whether Defendants Considered Alternative Accommodations and Whether Reasonable Accommodations Would Have Presented an Undue Hardship.**

As explained below, in viewing the record in a manner most favorable to Plaintiffs, there are triable issues of fact that preclude summary judgment. A reasonable jury could conclude that Defendants failed to engage in a fact-specific, good-faith process when responding to Plaintiffs' requests for religious accommodation. Specifically, Defendants offer no concrete evidence of having meaningfully explored options such as PPE, testing, reassignment, or shift swapping— particularly after the workplace environment changed post-vaccine.

Plaintiffs, by contrast, produced declarations, testimony, and internal communications showing they were categorically denied exemptions without any consideration of alternative accommodations or case-specific analysis. Thus, Defendants failed to meet their burden as a matter of law to show that they explored alternative accommodations and that there were no accommodations that would not have caused an undue hardship. Likewise, the record establishes, at the very least, genuine disputes of material facts on these issues, which requires a reversal of the district court's grant of summary judgment.

### A. There is a genuine dispute of material fact concerning whether Defendants considered all alternative accommodations in good faith.

Defendants assert that they considered alternative accommodations but did not find any practical. NACS Answering Br. at 30; Legacy Answering Br. at 50-51. This claim is unsupported by the record and directly contradicted by Plaintiffs' evidence.

Summary judgment is only appropriate where "there is no genuine dispute as to any material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All evidence must be viewed in the light most favorable to the non-moving party, with all reasonable inferences

drawn in their favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *Morris v. McNicol*, 83 Wash. 2d 491, 494 (1974); *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wash. 2d 506, 516 (1990). Courts must not weigh the evidence or determine credibility at summary judgment and should deny the motion if a reasonable jury could find for the non-moving party. *Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'ns, Inc.*, 915 F.3d 617, 626 (9th Cir. 2019); *Wilson v. Steinbach*, 98 Wash. 2d 434, 437 (1982). If conflicting evidence exists, the dispute must be resolved by a jury. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).

Under Title VII of the Civil Rights Act of 1964 and the Washington Law Against Discrimination (WLAD), a defendant is required to consider alternative accommodations for an employee's religious beliefs or practices unless doing so would impose an undue hardship on the operation of the employer's business. 42 U.S.C. § 2000e(j); *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 63 n. 1 (1986); *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977); RCW 49.60.180; *Kumar v. Gate Gourmet, Inc.*, 180 Wash. 2d 481 (2014) (requiring employers to engage in a good faith process to explore all

reasonable accommodations before denying a request). The burden of demonstrating undue hardship lies with the employer, not the employee. *E.E.O.C. v. Townley Eng'g Mfg.*, Co., 859 F.2d 610, 615 (9th Cir. 1988) (stating that the burden of attempting an accommodation lies with the employer, not the employee). The Supreme Court in *Groff*, 600 U.S. at 470, clarified that undue hardship means a substantial cost or disruption—rejecting the prior "de minimis" standard. Employers must demonstrate with concrete evidence that an accommodation would impose significant difficulty or expense rather than rely on speculation. *Id.*

An employer must explore all reasonable alternatives before denying a religious accommodation, and a blanket refusal without individualized consideration violates the law. *Groff*, 600 U.S. at 473; *see, e.g.*, *Duden v. State of Washington*, No. 3:24-cv-00255, at 7 (E.D. Wash. Jan. 2, 2025) (unpublished) (holding that employers must assess all viable accommodations, not simply reject requests outright); *Combs v. Peace Health*, No. 3:24-cv-00776, at 10 (D. Or. Jan. 14, 2025) (unpublished) (rejecting summary judgment where employer failed to provide concrete evidence of substantial hardship); *Bordeaux v. Lions*

11

*Gate Entertainment, Inc.*, No. 23-4340, at 5 (9th Cir. Feb. 28, 2025) (unpublished) (emphasizing that undue hardship must be analyzed in a fact-specific manner, considering employer size, nature of operations, and practical impact).

Here, NACS argues absurdly that "it is irrelevant whether Legacy and NACS even considered Higa's accommodations requests, if they can show that these accommodations would have resulted in an undue hardship." NACS Answer Br. at 30. *Tiano v. Dillard* does not support NACS's argument as they suggest. 139 F.3d 679 (9th Cir. 1998). While *Tiano* states that an employer can defend against a failure-to-accommodate claim by showing either (1) that it engaged in a good-faith effort to provide a reasonable accommodation, or (2) that accommodating the employee would have imposed an undue hardship, this does not excuse an employer from proving undue hardship with actual evidence that is not merely speculative. 139 F.3d at 681.

NACS argument is illogical because it suggests that an employer can simply claim undue hardship without first establishing, with evidence, that no reasonable accommodation was possible. This interpretation directly contradicts Title VII's framework, which requires

12

employers to engage in a good-faith effort to explore reasonable accommodations before concluding that an undue hardship exists. This Circuit has emphasized that the undue hardship inquiry is a "context-specific" factual question that requires a detailed, case-by-case analysis. *See Balint*, 180 F.3d at 1053–54.

In addition, Legacy's claim of having engaged in a good-faith effort to consider reasonable accommodations fails. The measures it cites—masking, PPE, testing, and related protocols—reflect general workplace policies implemented before vaccines were available. Legacy Answering Br. at 50-51. They do not demonstrate individualized assessments of whether those same measures could accommodate the religious beliefs of the small number of unvaccinated Plaintiffs. (See 3-ER-424–26, 30–35; 4-ER-604–06.) Therefore, Legacy's evidence that address the pre-vaccine environment were speculative and irrelevant to the situation facing Plaintiffs.

Moreover, NACS's assertions below belie its claim on appeal that it engaged in a meaningful exploration of reasonable accommodations. NACS stated: "NACS does not need to show, as Plaintiff alleges, that Plaintiff could have performed his job with PPE rather than the

13

vaccination as such would be against Legacy's policy requiring the vaccination. Indeed, around the country, healthcare facilities required vaccination *and* PPE." (2-ER-29.) This admission confirms that the only options available under the policy were vaccination and the use of PPE—not any alternative or individualized accommodations. By relying on a policy that foreclosed the possibility of accommodation from the outset, NACS cannot credibly argue that it undertook a good-faith, case-specific evaluation of reasonable alternatives, as required under Title VII.

Furthermore, Legacy's emphasis on the ineffectiveness of pre-vaccine precautions in curbing the pandemic does not answer the central question: whether, once most healthcare workers were vaccinated, unvaccinated employees could safely continue working with PPE and related protections. Legacy Answering Br. at 50-51. Legacy conflates the conditions of the pre-vaccine phase—when risk of transmission was ubiquitous—with the materially different, post-vaccine workplace environment.

Its reliance on generalized scientific assertions about the efficacy of vaccination sidesteps the fact-specific inquiry mandated by *Groff*.

14

Under *Groff*, an employer must show that an accommodation would impose a substantial cost or disruption—not merely cite prior, systemic hardships. *See* 600 U.S. 447, 473. Therefore, Legacy's failure to assess whether PPE and other measures could accommodate these Plaintiffs in a changed workplace environment violated Title VII.

Indeed, Legacy's briefing reveals that it approached religious exemption requests under a predetermined policy of unpaid leave, rather than engaging in individualized, good-faith evaluations. In describing the implementation of the vaccination policy, Legacy highlights a message from its then–Chief Human Resources Officer, Sonja Steves, emphasizing the complexity and seriousness of the decision—but says nothing about evaluating accommodations on a case-by-case basis. *See* Legacy Answering Br. at 15. (3-ER-422–23 ¶¶ 26–27.) Instead, Legacy defends the policy by asserting that "the Vaccination Policy was necessary for many reasons." *See* Legacy Answering Br. at 16. This framing suggests a blanket conclusion that no accommodation short of vaccination would ever suffice—effectively foreclosing the possibility of meaningful religious accommodations. Plaintiffs do not

15

challenge the validity or effectiveness of the policy itself, but Groff requires more than generalized assertions or rigid policy preferences.

Similarly, Plaintiffs do not dispute Legacy's need to maintain adequate staffing to ensure patient care or its responsibility to provide high-level care to patients. *See* Legacy Answering Br. at 40. This general concern, however, does not address whether accommodating these Plaintiffs would have caused a substantial burden.

In any event, the record is replete with disputes of triable issues on the question of whether Defendants considered alternative accommodations. Defendants claim they considered alternative accommodations before denying Plaintiffs' religious exemption requests. NACS Answer Br. at 30; Legacy Answering Br. at 17, 50-51. However, the summary judgment record directly contradicts this assertion. Plaintiffs' sworn declarations, deposition transcripts, and email correspondences attached to their responses to Defendants' summary judgment motions, raise a genuine dispute about whether Defendants categorically rejected religious accommodations without considering alternative accommodations. (2-ER-57, 60, 70, 73, 80; 3-ER-319, 335,

16

340, 345, 354, 366, 378, 386, 399.) These factual disputes preclude summary judgment.

For example, Plaintiffs Damaris Brickie, Aimee Sweet, Risa Brody, Harold C. Williams, Daniela Marianu, Brianna Hall, and Angela Loghry stated unequivocally that Defendants never invited them to participate in any accommodation meeting or process to assess whether their religious beliefs could be accommodated. (3-ER-336, 342, 357, 368, 380, 387, 402.) Plaintiff Ivan Atanassov stated in his declaration: "I was terminated on or about October 19, 2021, Legacy Health discharged me from my employment without any further appeal proceedings nor any accommodation." (3-ER-347.)

Furthermore, after receiving a form denial of her religious exemption request, Plaintiff Risa Brody repeatedly attempted to engage Legacy in a dialogue about potential accommodations, requesting clarification, an opportunity to appeal, and proposing specific alternatives such as masking and screening—measures already permitted for vaccinated staff. (3-ER-364.) Legacy failed to respond substantively and ultimately issued a perfunctory rejection of her appeal. (3-ER-384.) This complete absence of engagement or

17

individualized consideration directly contradicts Legacy's claim that it acted in good faith and underscores the existence of a genuine dispute as to whether it meaningfully considered reasonable accommodations.

Another Plaintiff attested that Defendants denied exemption requests without providing any explanation or evidence showing that accommodating religious beliefs would impose an undue hardship (3-ER-375–76.) These statements directly contradict Defendants' assertion that they evaluated accommodations in good faith. In addition, Plaintiff Toby Higa stated in a complaint to the Oregon Bureau of Labor and Industries that when he attempted to propose alternative accommodations, Legacy refused to allow him to provide options he believed were safe. (4-ER-582.) Higa further attested that Legacy never allowed him to discuss what a reasonable accommodation could be before denying his exemption request outright. (4-ER-582.)

Moreover, as stated above, Plaintiff Higa testified that "[t]here was no option to discuss any potential options." (2-ER-70.) He additionally testified that he was willing to discuss the concerns "and what [he] could do to help them[.]" (*Id.*)

What is more, the attachments to Plaintiffs' responses to Defendants' motions for summary judgment also contain emails from Defendants stating that appeals of the decision not to grant the religious exemption were "no longer being accepted," further evidence that Defendants failed to consider alternative accommodations. (3-ER-400, 408.)

### 1. Indefinite unpaid leave and planned termination is not a reasonable alternative accommodation.

NACS also disingenuously claims that "Higa was instead granted, the alternative accommodation of unpaid administrative leave." NACS Answer Br. at 32. However, NACS mischaracterizes the options provided because Plaintiffs were not merely given the option of unpaid leave, but rather, were told they would be placed on unpaid leave and terminated shortly thereafter. (3-ER-399.)

Indefinite unpaid leave and subsequent termination, such as what was offered Plaintiffs, is not reasonable because it does not enable an employee to perform their job and may constitute an adverse employment action. *Fonseca v. Sysco Food Servs. of Ariz.*, 374 F.3d 840,

19

847 (9th Cir. 2004); *Gallagher v. Hawaii Symphony Orchestra*, No. 1:23-cv-00245, at 21-22 (D. Haw. Mar. 27, 2024) (unpublished).

NACS cites *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986), and *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) to support its argument that "unpaid leave is a reasonable accommodation." NACS Answer Br. at 32. While limited unpaid leave may sometimes be reasonable, courts have distinguished *Ansonia*, holding that indefinite leave fails to resolve the employment-religion conflict. *Zimmerman v. PeaceHealth*, No. 3:22-cv-05960, at 9 (W.D. Wash. 2023). Indeed, *Ansonia* held that limited unpaid leave may be a reasonable accommodation when it eliminates the conflict between religious practice and work. *Ansonia*, 479 U.S. at 70–71. However, *Ansonia* involved only a few days of unpaid leave for religious observance—not indefinite leave. *Id.* at 70.

Meanwhile, *Nunes* addressed a medical leave under the Americans with Disabilities Act (ADA), not Title VII. The Ninth Circuit in *Nunes* held that unpaid leave can be a reasonable accommodation if it allows the employee to return to work and reversed the district court's grant of summary judgment in favor of the employer. *Nunes*, 980

20

F. Supp. at 1339 ("An individual with a disability who needs time off from work may be a qualified individual with a disability if the requested leave would allow the individual to perform the essential functions of her employment when the leave is over."). Thus, *Ansonia* and *Nunes* are both distinguishable because the alleged accommodation here was indefinite unpaid leave and subsequent termination, which would not have allowed Plaintiffs to return to work.

In summary, the record demonstrates significant factual disputes regarding whether Defendants engaged in a meaningful interactive process or considered alternative accommodations before denying Plaintiffs' religious exemption requests. While Defendants assert that they explored all options, the evidence establishes otherwise. Plaintiffs were not invited to discuss potential accommodations, nor were they given individualized assessments of whether reasonable alternatives—such as PPE, regular testing, remote work, shift-swapping, or reassignment—could have resolved the conflict. Therefore, in viewing the evidence in a manner most favorable to Plaintiffs, the district court erred in granting summary judgment, and its decision should be reversed.

21

**B. There is a genuine dispute of material fact concerning whether accommodating the Plaintiffs' sincerely held religious beliefs would result in an undue hardship.**

Defendants contend that accommodating Plaintiffs' sincerely held religious objections to the COVID-19 vaccine would have imposed an undue hardship. NACS Answering Br. at 13, 44; Legacy Answering Br. at 36. As delineated below, however, Defendants did not meet their summary judgment burden to show that accommodating Plaintiffs would have caused an undue hardship.

An employer cannot discharge its burden through generalized assertions or historical concerns but must show that the accommodation at issue would cause "substantial increased costs in relation to the conduct of [its] particular business." *Groff*, 600 U.S at 470.

Recent decisions, including in *Keene v. City and County of San Francisco*, No. 24-1574 (9th Cir. Jan. 30, 2025) (unpublished), reaffirm that this is a fact-intensive inquiry. There, this Court held that accommodations such as masking, PPE, and testing—virtually identical to those proposed by Plaintiffs here—did not impose an undue hardship

22

where the employer failed to present evidence showing a substantial cost burden:

> CCSF has failed to show these proposed measures imposed an 'undue hardship' given their minimal cost and considering that during the relevant time period Appellants' worksite hosted thousands of appointments with members of the public, regardless of their vaccination status. *Groff*, 600 U.S. at 470-71 (requiring courts to consider "the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer" (internal quotations and citations omitted) (alteration in the original))[.]

That analysis mirrors this case. Defendants provide no *post-vaccine* data to demonstrate how accommodating a small number of religious objectors through previously acceptable safety protocols—PPE, testing, and isolation—would have imposed substantially increased costs or operational burdens once the vast majority of the workforce had been vaccinated. The only evidence cited stems from the *pre-vaccine* phase of the pandemic, when all employees, vaccinated or not, were at higher risk and operational burdens were categorically different.

As courts have repeatedly emphasized the "undue hardship" analysis must focus on the "practical impact in light of the nature, size, and operating cost" of the employer's *actual* circumstances. *See*

23

*MacDonald v. Oregon Health & Science Univ.*, 689 F. Supp. 3d 906, 921 (D. Or. 2023). However, neither NACS nor Legacy provides any such analysis based on the actual post-vaccine circumstances. *See Balint*, 180 F.3d at 1054; accord *Groff*, 600 U.S. at 473 (describing the "undue-hardship standard" as a "context-specific standard"); *see also Zimmerman*, No. 3:22-cv-05960 (W.D. Wash. Nov. 9, 2023) (unpublished) (emphasizing that the employer must "consider alternative accommodation options," citing *Groff*, 600 U.S. at 473); *Baugh v. Austal USA, LLC*, No. 1:22-cv-00329 (S.D. Ala. Jan 3, 2025) (unpublished) (explaining that at the summary judgment stage, despite the defendant employers estimate of costs, a jury could find that the defendant did not suffer an undue hardship).

In *MacDonald v. Oregon Health & Science University*, for example, the court denied a motion to dismiss where a nurse challenged her termination for refusing the COVID-19 vaccine on religious grounds. 689 F. Supp. 3d at 910-912. OHSU rejected her exemption, claiming any accommodation would impose an undue hardship. *Id.* at 911-912. The court, applying *Groff*, found that undue hardship requires a fact-specific showing of substantially increased costs—not generalized

24

assumptions—and found OHSU had not met that burden. *Id.* at 913-918.

The reasoning in *MacDonald* reinforces that whether accommodating an unvaccinated employee imposes an undue hardship is a fact-driven question that cannot be resolved through categorical assertions or based on past, irrelevant information. There, as here, the plaintiff proposed accommodations such as masking and testing, and the employer responded with broad claims that no alternative to vaccination could suffice. Although the record here is more developed than in *MacDonald*, Defendants still fail to offer any evidence demonstrating that accommodating Plaintiffs in the post-vaccine environment would have imposed a substantial burden.

Legacy contradicts the record when it claims that Plaintiffs' religious exemption requests were "denied because such an accommodation imposed an undue hardship." Legacy Answering Br. at 27. In fact, the standard denial letters stated that the requests were denied for failing to meet Legacy's internal criteria for exemption—such as consistency and specificity—not because of any analysis regarding undue hardship. (3-ER-339.) *See* Appellant's Br. at 15. Thus, Legacy's

25

assertion that it "engaged in good faith" with Plaintiffs' proposed accommodations is unsupported and demonstrably false. Legacy Answering Br. at 29. At minimum, this factual dispute precludes summary judgment. Moreover, as discussed above, this language does not reflect whether it considered alternative accommodations—it refers only to "proposed accommodations," leaving unanswered whether it made a broader, good-faith effort to identify other reasonable options. Defendants' position—that essentially no accommodation short of vaccination could ever be reasonable—nullifies the very purpose of religious exemptions under Title VII and parallel state laws. Their categorical position is not just contrary to *Groff*, but also renders the exemption process absurd. If, as Defendants contend, the only acceptable course is vaccination, then religious exemptions become meaningless in both theory and practice. This approach improperly transforms what should be a "fact-specific inquiry" into a per se rule against accommodation. *See We the Patriots USA, Inc. v. Hochul*, 17 F.4th 226 (explaining that a law that "foreclose[s] all opportunity for Plaintiffs to secure reasonable accommodation under Title VII, would "conflict with federal law"); *see also Gamon v. Shriners Hosps. for*

26

*Children*, No. 3:23-cv-00216, 2024 WL 627310, at *6 (D. Or. Feb. 15, 2024) (unpublished) (rejecting argument that no accommodation could comply with state vaccine rules because it would render the exemption provision "meaningless surplusage"); *Zimmerman*, No. 3:22-cv-05960, 2023 WL 7276782, at *9 (rejecting the notion that scientific consensus alone satisfies *Groff*'s fact-specific standard and holding that treating unpaid leave as the only possible accommodation "would render the availability of religious accommodations meaningless").

While Legacy claims accommodating Plaintiffs would impose an undue hardship (Legacy Answering Br. at 36-38), other hospitals like Providence Medical Center granted religious exemptions from vaccination and a religious accommodation. (3-ER-348.) This illustrates that reasonable accommodations were feasible in similar clinical settings, yet Legacy relied on blanket assumptions—rather than individualized analysis—to conclude that any deviation from its vaccine policy would be untenable.

Because Defendants offer no post-vaccine, individualized evidence showing that accommodating Plaintiffs would have imposed substantial increased costs when most of the workforce was vaccinated, they have

27

failed to meet their burden under *Groff*. Their categorical rejection of all non-vaccine accommodations cannot substitute for the fact-specific inquiry that Title VII requires. At a minimum, the record presents genuine disputes of material fact that preclude summary judgment on the issue of undue hardship.

## CONCLUSION

For the reasons stated above and in Appellant's Brief, Plaintiffs request this Court to vacate the district court's order and judgment granting summary judgment in favor of Defendants and to remand the case to the district court for further proceedings.

Washington Appellate Law Firm
Respectfully submitted,

Dated: April 22, 2025            By: /s/ Corey Parker

Attorney for Plaintiff –
Appellants

28

# FORM 17. STATEMENT OF RELATED CASES
## PURSUANT TO CIRCUIT RULE 28-2.6

---

**I.    9th Cir. Case Number: No. 24-5977**

The undersigned attorney or self-represented party states the following:

[ **X** ] I am unaware of any related cases currently pending in this court.

[   ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Dated:  April 22, 2025                    By: _/s/ Corey Parker_

29

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains **4,803 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Century Schoolbook**, as determined by Microsoft Word, which was the word-processing system used to prepare this document.

Dated: April 22, 2025          By: /s/ Corey Parker

30

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing

**APPELLANTS' REPLY BRIEF** with the Clerk of the Court by using

the Appellate CM/ECF system on **April 22, 2025**. I further certify that

all participants in the case are registered CM/ECF users and that

service will be accomplished by the appellate CM/ECF system.

                              Washington Appellate Law Firm
                              Respectfully submitted,

Dated: April 22, 2025         By: /s/ Corey Parker
                                  Attorney for Plaintiff–
                                  Appellants

31